# WILMERHALE

**Howard M. Shapiro**

+1 202 663 6606 (t)
+1 202 663 6363 (f)
howard.shapiro@wilmerhale.com

January 9, 2018

<u>**VIA ECF**</u>

The Honorable Loretta A. Preska
United States District Judge
United States District Court for the
  Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Re:   *United States v. Tanner*, *et al.*, No. 17-cr-61 (LAP)

Dear Judge Preska:

      We write in response to your Order dated January 2, 2018 requesting counsel's views as to the applicability of *United States v. Brown*, 459 F.3d 509 (5th Cir. 2006), to this case.

      In *Brown*, the Fifth Circuit applied the standard for private-sector honest services fraud articulated by the Second Circuit in *United States v. Rybicki*, 354 F.3d 124, 141-42 (2d Cir. 2003) (*en banc*), and concluded that the subject indictment failed to allege a crime of honest services fraud because the defendant employees were acting at the direction of their employer. 459 F.3d at 522.  As a legal matter, the *Brown* court held there can be no intent to defraud the employer where, through its directions to the defendant employees, the employer creates an understanding among its employees that the allegedly fraudulent acts were in the employer's interest, regardless of whether those acts result in the breach of the employees' fiduciary duty to the employer. *Id.*  That is precisely what the government has alleged here.  Accordingly, and for the reasons discussed below, at oral argument, and in our prior briefing and letters,[1] the superseding indictment should be dismissed on vagueness grounds as applied to Messrs. Tanner and Davenport.

      In *Brown*, the government charged Enron employees with honest services fraud based on their effort to fraudulently inflate Enron's earnings by "parking" with Merrill Lynch a short-term

---

[1] Defendants incorporate by reference all of the arguments made in their prior briefing and letters.  *See* Docket Entries 43, 53, 72, and 78.

Wilmer Cutler Pickering Hale and Dorr LLP, 1875 Pennsylvania Avenue NW, Washington, DC 20006

Beijing    Berlin    Boston    Brussels    Denver    Frankfurt    London    Los Angeles    New York    Palo Alto    Washington

WILMERHALE

January 9, 2018
Page 2

equity interest in three power-generating barges. *Id.* at 513. The government alleged "a fiduciary breach—the failure to disclose the full truth about the barge transaction—that resulted in both a personal benefit (increased bonus) to the duty-breaching Enron employees and detriments (but also benefits) to the corporation itself." *Id.* at 520. The defendants were convicted at trial, but the Fifth Circuit reversed on the legal ground[2] that the employees had acted "in pursuit of what they understood to be a corporate goal" of enhancing Enron's earnings. *Id.* at 519-22. While the court held that fraudulently inflating earnings in a misguided attempt to help the company and increase their personal bonuses was a clear breach of a fiduciary duty, the court found that the government's theory was legal flawed. *Id.* at 522-23. The court emphasized that the perception of the employee based on the employer's directions should guide the analysis in this context.[3] Specifically, the court held that:

> [i] where an employer intentionally aligns the interests of the employee with a specified corporate goal, [ii] where the employee perceives his pursuit of that goal as mutually benefitting him and his employer, and [iii] where the employee's conduct is consistent with that perception of the mutual interest, such conduct is beyond the reach of the honest-services theory of fraud.

*Id.* at 522; *see also id.* ("In other words, this case presents a situation in which the employer itself created among its employees an understanding of its interest that, however benighted that understanding, was thought to be furthered by a scheme involving a fiduciary breach."). These three principles, following from the court's express reliance on the *Rybicki en banc* opinion, constitute the holding in *Brown*, which remains the seminal opinion in this area. *See Brown*, 459 F.3d at 523.

The case at bar is factually analogous to *Brown*. Through its directions to him, Valeant created the perception for Mr. Tanner that all of his efforts in promoting Philidor mutually

---

[2] Notably, the convictions were reversed because the court concluded that an indictment alleging that defendants acted at the direction of their employer was insufficient to state a crime of honest services fraud. The *Brown* panel explicitly stated that it was reversing the defendants' convictions "on the legal ground that the government's theory of fraud relating to the deprivation of honest services . . . is flawed." *Id.* at 513; *see also id.* at 517-18 (addressing defendants' argument challenging the sufficiency of the indictment).

[3] The government in *Brown* pointed to specific actions taken by the defendants against the company's interests, including "withholding material information from Enron and its shareholders" and "causing Enron to spend a substantial amount of money it would not have spent absent the false 'sale,'" to argue that the transaction "did not serve the purposes of Enron's shareholders" and that it did not serve a "*legitimate* corporate purpose." *United States v. Brown*, 05-20319 (Doc. No. 51381420) at 140, 142 (emphasis in original). However, in adopting a standard based on the employee's perception of his employer's interests, the court necessarily rejected the government's arguments.

WilmerHale

January 9, 2018
Page 3

benefitted Valeant, Philidor, and ultimately himself.  In particular, the government alleges that Valeant, the purported victim in this case, assigned Mr. Tanner the responsibility of "supporting," "supervising," and "growing" Philidor.  Complaint ¶¶ 15(e), 19; *see also* Tr. 36:7-11, Aug. 10, 2017 ("THE COURT: No. The difference is in this case, we all agree, I think, that he was tasked with growing Philidor.  It's the unique facts of this case that make it so difficult.  MR. ALLEN: Well, he was given a particular instruction of growing Philidor.").  In addition to aligning its interests with those of Mr. Tanner, Valeant also aligned its interests with Philidor's interests.  The superseding indictment describes Philidor as "a specialty mail-order pharmacy that was formed in or about January 2013 with the assistance of Valeant, including Valeant's provision of financing, personnel, and business opportunities" and states that "at least 90 percent of the drugs dispensed by Philidor were Valeant-branded drugs."  Superseding Indictment ¶ 2.  The government thus alleges that, in January of 2013, at least six months before the start of the alleged conspiracy between Messrs. Tanner and Davenport, *see id.* ¶ 15, Valeant had *already* aligned its interests with those of Philidor.  Valeant sought to build and grow Philidor so that it could serve as a channel to sell Valeant drugs and therefore increase Valeant's revenue, and it instructed Mr. Tanner to pursue those corporate goals.  Because each of the four courses of conduct alleged in Paragraph 9 of the superseding indictment were consistent with, and in service of, Valeant's directive to Mr. Tanner to support and grow Philidor, the government has failed to plead that Mr. Tanner was serving his "own interests instead" of Valeant's.  *Rybicki*, 354 F.3d at 142.  As *Brown* instructs, given Valeant's directive and the resulting convergence of Valeant's interests with those of Philidor and Mr. Tanner, that Mr. Tanner's conduct may have also served Philidor's interests or his own personal interests is of no moment.  There can be no intent to defraud Valeant here.

*Brown's* legal analysis is particularly applicable because it was "guided by the leading opinion on honest services fraud, the Second Circuit *en banc* decision in *Rybicki*."  459 F.3d at 521.  Based on the standard articulated in *Rybicki*, the *Brown* panel held that:

> inherent in the Government's insistent argument[] [is] that a fiduciary breach is itself a sufficient reflection of interest divergence.  But that view encompasses every knowing fiduciary breach, and we meet again our oft-mentioned chariness of making every knowing fiduciary breach a federal crime.

*Id.* at 522.  In other words, *Brown* reaffirmed *Rybicki*'s requirement that an employee's interests must actually diverge from his employer's by holding that such divergence cannot be found where the alleged conduct is consistent with and in service of the employer's instructions and objectives.  *See Rybicki*, 354 F.3d at 141-42 (holding that, in the context of Section 1346, a scheme to defraud requires a defendant "to act in his or her or the defendant's own interests instead" of the employer's).

Here, as in *Brown*, "[w]hat makes this case exceptional is that, in typical bribery and self-dealing cases, there is usually no question that the defendant understood the benefit to him resulting from his misconduct to be at odds with the employer's expectations."  *Brown*, 459 F.3d

WILMERHALE

January 9, 2018
Page 4

at 522.  Notably, there is not a single case affirming a conviction in this Circuit that suggests Section 1346 can be reasonably applied to the facts alleged in this case, where Valeant created the perception that Valeant's interests were aligned with those of Philidor and Mr. Tanner sought to fulfill Valeant's directions by promoting Philidor's interests.  *See id.* at 520 n.9 (stating that the perimeter of criminal conduct goes only so far as "the set of cases in which convictions have been upheld;" the defendant need not point to analogous cases "in which convictions have been reversed").  Applying the principles articulated in *Brown* and *Rybicki*, because Mr. Tanner's conduct served Valeant's corporate goals, and not his personal interests "instead," Mr. Tanner did not have sufficient notice that his actions were violative of Section 1346.  Nor, accordingly, did Mr. Davenport.

Just as in *Brown*, where the government argued that a fiduciary breach is sufficient to establish an honest services violation, *see* 459 F.3d at 520-21, here, the government has repeatedly asserted that it is sufficient to show that Mr. Tanner's mere use of his position in any manner in exchange for a payment from Mr. Davenport is sufficient to prove honest services fraud.  *See, e.g.*, Doc. No. 75 ("Gov. Ltr.") at 9 n.5 ("Thus, in this context, the Government must prove that the employee took some action in exchange for the bribe or kickback; that such action was caused, at least in part, by the bribe or kickback; and that the concealment of that bribe or kickback was material to the employee.").[4]  It is no surprise, then, that in its opposition to defendants' original motion to dismiss, the government sought (and will likely seek now) to distinguish *Brown* on the basis that *Brown* did not involve a payment from a third party.  *See* Doc. No. 48 ("Gov. Opp.") at 11-12.  In so doing, the government asks this Court to criminalize the breach of a fiduciary duty because the source of the payment is a third party, even if an employee is acting at his employer's direction to pursue a corporate goal articulated by his employer.

Critically, *Brown* made clear that it is (i) the intentional alignment of an employee's interest with a specified corporate goal by the employer; (ii) the employee's perception that the pursuit of the corporate goal mutually benefits him and the employer; and (iii) that the employee's conduct is consistent with that perception that result in the exclusion of the conduct from the ambit of Section 1346.  The source of the alleged benefit to the employee does not alter the analysis.  459 F.3d at 523.  Every undisclosed payment to an employee by a third party is not

---

[4] The government has argued that the relevant loss in this context is not an economic one but the deprivation of the employer's right to the employee's honest services resulting from the employee's "misuse" of his position, s*ee* Gov. Ltr. at 2, and that "[w]hat is criminalized, after all . . . is the deprivation of the employer or public's right to honest services," Gov. Opp. at 11.  As the *Brown* panel observed when the government in that case made an identical argument, "the Government's argument is somewhat circular, relying as it does on the statutory text's use of the term 'honest services.'  As already stated, the statute itself provides not a hint of the definition of the term; instead, it is the case law that establishes the meaning of the vague and amorphous phrase." 459 F.3d at 521 n.10.

WilmerHale

January 9, 2018
Page 5

a bribe or a kickback.  Indeed, it is the government's allegations regarding a defendant's intent to defraud that determine whether a payment is a bribe or a kickback.  The government cannot manufacture criminal intent from a payment simply by labeling it a bribe or a kickback.  *Skilling* requires a *quid pro quo*.  *Skilling v. United States*, 561 U.S. 358, 409 (2010).  And the involvement of a third party cannot be used to convert every breach of fiduciary duty into an honest-services-fraud violation. [5]  Moreover, *Brown* was decided before *Skilling* imposed a *quid pro quo* requirement, and the *Brown* holding did not turn on the absence of a payment but on the unity of interests and the corporate goals communicated to the employee.  Rather, the *Brown* panel noted the absence of a third-party payment in passing to bolster its central premise that the employer's "legitimate interests were not so clearly distinguishable from the corporate goals communicated to the Defendants."  459 F.3d at 522; *see also id.* ("This case, in which Enron employees breached a fiduciary duty in pursuit of what they understood to be a corporate goal, presents a situation in which the dishonest conduct is disassociated from bribery or self-dealing and indeed associated with and concomitant to the employer's own immediate interest.").

The Fifth Circuit reaffirmed the *Brown* holding in *United States v. Skilling*, 554 F.3d 529, 545 (5th Cir. 2009), *aff'd in part, vacated in part on other grounds, remanded*, 561 U.S. 358 (2010).  In *Skilling*, the court stated, "we can distill the holding in *Brown* to be the following: when an employer (1) creates a particular goal, (2) aligns the employees' interests with the employer's interest in achieving that goal, and (3) has higher-level management *sanction improper conduct to reach the goal,* then lower-level employees following their boss's direction are not liable for honest-services fraud."  *Id.*  To the extent the government attempts to rely on the "sanction improper conduct" language in the third prong, such reliance would be severely misplaced for two reasons.  First, in *Skilling* and *Brown*, the defendants sought to enhance

---

[5] Consider, for example, the government's hypothetical regarding "a lawyer who discouraged a company from pursuing a merger because another potential acquirer bribed him."  Gov. Ltr. at 6.  "It would be bizarre and perverse," the government argues, "to make liability dependent on a showing of the economic desirability of the merger."  *Id.*  Perhaps that is so, but this fact pattern is not analogous to the one the government has alleged here, and it conflates the concept of whether the defendant acted at the direction of the employer with whether the defendant's actions had some incidental benefit to the employer.  A hypothetical more analogous to the allegations here would proceed as follows: Company A seeks to acquire Company B.  Company A directs its lawyer to facilitate the acquisition of Company B.  He does so.  Both Company A and Company B make substantial profits, and, in view of the mutual success, Company B later makes a payment to the lawyer, who does not disclose the payment to Company A.  That is not honest services fraud, and the source of the payment (a third party) does nothing to change that.  Nor, according to *Skilling*, does the lawyer's failure to disclose the payment to Company A convert the lawyer's actions to an honest-services-fraud violation.  *Skilling*, 561 U.S. at 409.

WILMERHALE

January 9, 2018
Page 6

company earnings through *fraudulent* actions.[6]  Here, the government has not alleged any misrepresentation or fraudulent statements by Mr. Tanner other than Mr. Tanner's failure to disclose his financial interest in Philidor (which under the Supreme Court's *Skilling* decision is insufficient to make out a crime of honest services fraud).[7]  Second, the corporate goal that Valeant communicated to Mr. Tanner and sanctioned was the *promotion* of Philidor.  All of the actions taken by Mr. Tanner described in Paragraph 9 of the superseding indictment, which purports to outline Mr. Tanner's alleged improper conduct, relate to Mr. Tanner's efforts to pursue Philidor's interests and to grow Philidor's business.  Other than Mr. Tanner's alleged receipt of an undisclosed payment from Mr. Davenport, which alone is insufficient, Mr. Tanner's actions were consistent with Valeant's directive to Mr. Tanner to promote Philidor and Mr. Tanner's perception that the two companies' interests were aligned.

The sensible and necessary limits recognized by *Rybicki* and *Brown* on the outer limit of private-sector honest services fraud find further support in the rule of lenity, which is "especially appropriate in construing [Section 1346]." *Skilling*, 561 U.S. at 410-11 (internal quotation marks omitted).  As the Court is aware, under the rule of lenity, ambiguity concerning the ambit of criminal statutes should be resolved in the defendants' favor.  *United States v. Bass*, 404 U.S. 336, 347 (1971).  Even if the Court now finds that the statute applies to Messrs. Tanner and Davenport, they cannot be held criminally liable because they had no fair notice that the statute's undefined perimeter overlapped with their conduct.  *See Bass*, 404 U.S. at 347-348 ("[L]egislatures and not courts should define criminal activity.").  On this uncharted legal terrain, Messrs. Tanner and Davenport cannot be expected to have foreseen unwritten law and conformed their conduct to it.  The *Brown* panel's concluding finding resonates here: "Given our repeated exhortation against expanding federal criminal jurisdiction beyond specific federal statutes to the defining of common-law crimes, we resist the incremental expansion of a statute that is vague and amorphous on its face and depends for its constitutionality on the clarity divined from a jumble of disparate cases.  Instead, we apply the rule of lenity and opt for the

---

[6] As discussed above, in *Brown*, the government alleged that Enron executives sought to enhance the company's earnings by "parking" barges with Merrill Lynch so that Enron could fraudulently treat the transaction as a purchase and book the money received from Merrill Lynch as earnings. 459 F.3d at 513-14.  In *Skilling*, the defendant was accused of fraudulently "overstating the company's financial situation for more than two years" to keep Enron's stock price high.  554 F.3d at 534.  In concluding that *Brown* did not insulate the defendant's conduct from criminal liability, the court emphasized that Enron had not sanctioned fraudulent actions to achieve the corporate goals.  *Id.* at 546-47.  There are no such allegations of fraudulent conduct here.

[7] To the extent the government relies on an argument that Valeant did not authorize the alleged $10 million payment, rather than an argument that Valeant did not authorize the conduct described in Paragraph 9 of the superseding indictment, that would simply be another iteration of their argument that the payment from Mr. Davenport to Mr. Tanner serves as both the *quid* and the *quo*.  For the reasons set forth at length in our prior briefing, it cannot.

WILMERHALE

January 9, 2018
Page 7

narrower, reasonable interpretation that here excludes the Defendants' conduct." 459 F.3d at 523.

In sum, the government's theory cannot be squared with *Brown*. Mr. Tanner cannot be criminally charged with honest services fraud for promoting a company that his employer directed him to promote. The government's unwavering focus on Mr. Tanner's failure to disclose the alleged payment is insufficient under *Skilling* and seeks to distract from the instructions that Mr. Tanner received from Valeant to promote Philidor. Under *Brown* and *Rybicki*, because (i) Valeant intentionally aligned Mr. Tanner's interests with Valeant's goal of promoting Philidor, (ii) Mr. Tanner perceived his pursuit of that goal as mutually benefitting him and Valeant, and (iii) Mr. Tanner's conduct was consistent with his perception of mutual interest, Mr. Tanner did not act in his interests "instead" of Valeant's and he cannot be found guilty of honest services fraud, regardless of whether he received a payment from Mr. Davenport. Nor, accordingly, can Mr. Davenport for making such payment.

For the reasons stated above, as well as those articulated at the oral argument and in our previous briefing, the defendants move to dismiss the superseding indictment on vagueness grounds as applied to the defendants.

We remain available at the Court's convenience to answer any questions the Court may have.

Respectfully submitted,

/s/ Howard M. Shapiro

Howard M. Shapiro
Brendan R. McGuire
Matthew R. Galeotti

cc: All Counsel (via e-mail)