WILMERHALE

Howard M. Shapiro

July 13, 2018

+1 202 663 6606 (t)
+1 202 663 6363 (f)
howard.shapiro@wilmerhale.com

**BY ECF**

The Honorable Loretta A. Preska
Senior United States District Judge
United States District Court for the
   Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Re:    *United States v. Gary Tanner and Andrew Davenport*, No. 17-cr-61 (LAP)

Dear Judge Preska:

      We write on behalf of defendants Gary Tanner and Andrew Davenport in response to the Court's order dated July 5 (all dates are 2018). Defendants respectfully oppose the government's motion to quash the subpoenas requested by defendants in connection with the evidentiary hearing scheduled for July 18 and ask the Court to reconsider its order quashing the subpoenas.

      By way of background: On June 27, the Court held a conference on defendants' motion for a new trial based on evidence of a juror's dishonesty during voir dire and scheduled a hearing. During that conference, the Court instructed defendants to issue any subpoenas in connection with the hearing by the next day. Defendants complied with that request, submitting a letter to the Court with four subpoenas attached. Doc. No. 169. On June 29, the government submitted a letter stating that it intended to move to quash the subpoenas and claiming that their issuance was unprecedented. Doc. No. 170. That same day, Defendants filed a short letter in response, citing authority in support of the issuance of the subpoenas. Doc. No. 171. On July 3, the government moved to quash the subpoenas. Doc. No. 173. On July 5—before defendants had an opportunity to respond to the government's motion—the Court issued an order quashing the subpoenas with two limited exceptions. Doc. No. 174.

      That order should be withdrawn. As an initial matter, the government does not have standing to move to quash the subpoenas. "A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege or a proprietary interest in the subpoenaed matter." *United States v. Nachamie*, 91 F. Supp. 2d 552, 558 (S.D.N.Y. 2000). The government has made no such claim here. Nor has it shown the presence of any other circumstance that courts in this district have held can confer standing on the government in this context, including "preventing undue lengthening of the trial" or "preventing undue harassment of witnesses." *United States v. Nektalov*, No. S203-CR-828 (PKL), 2004 WL 1574721, at *1 (S.D.N.Y. July 14, 2004). Courts have also looked to "whether the subpoenaed party joins in the government's motion to quash." *Id.*; *accord United States v. Vasquez*, 258 F.R.D. 68, 71

July 13, 2018  
Page 2

WILMERHALE

(E.D.N.Y. 2009).  No subpoenaed party has done so here.  As such, the government does not have standing to move to quash these subpoenas.[1]

The government's motion to quash also fails on its merits.  The Sixth Amendment guarantees that "the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor."  In furtherance of that fundamental guarantee, Rule 17 of the Federal Rules of Criminal Procedure permits defendants to subpoena evidentiary materials.  *See United States v. Nixon*, 418 U.S. 683, 698-699 (1974).  And "[a] Rule 17(c) subpoena may … properly be used to gather documents for a … post-trial hearing."  *United States v. Leaver*, 358 F. Supp. 2d 273, 276 (S.D.N.Y. 2005); *accord United States v. Nix*, 251 F. Supp. 3d 555, 561 (W.D.N.Y. 2017) ("[P]ost-trial use of subpoenas pursuant to [Rule] 17(c) has been recognized as permissible.").

In *Nixon*, the Supreme Court held that a party requesting issuance of a Rule 17(c) subpoena for documents must demonstrate:

> (1) that the documents are … relevant; (2) that they are not otherwise procurable reasonably in advance of [the hearing] by exercise of due diligence; (3) that the party cannot properly prepare for [the hearing] without such production and inspection in advance of [the hearing] and that the failure to obtain such inspection may tend unreasonably to delay the [hearing]; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

418 U.S. at 699-700.  In other words, the party seeking a subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity."  *Id.* at 700; *accord United States v. Rajaratnam*, 753 F. Supp. 2d 317, 320 (S.D.N.Y. 2011).  When these requirements are satisfied as to documents in the possession of third parties, a party is "entitled to seek these third-party records from the third parties, who are the proprietors of those records."  *Nachamie*, 91 F. Supp. 2d at 563-564.

The four subpoenas submitted by defendants satisfy the *Nixon* requirements, requesting specific documents that are admissible and bear directly on the issues to be addressed at the hearing.  The government tries to obscure the documents' relevance by describing the "sole issue" at the hearing as whether Ms. Teams "intentionally lied during *voir dire*." Doc. No. 173 at 4.  That, however, is only half the inquiry.  The purpose of the hearing is to determine both whether Ms. Teams intentionally lied *and*, if so, whether "a correct response would have provided a valid basis for a challenge for cause," *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).  The subpoenas seek evidence relevant to both parts of this inquiry.  Each subpoena concerns the questions to which Ms. Teams did not provide truthful answers.  Specifically, Ms. Teams did not disclose that she had been investigated by the State Justice Center, nor did she disclose the ongoing civil litigation against her in this district.

---

[1] In fact, two of the third-party recipients, Ms. Teams's employer and the Justice Center for the Protection of People with Special Needs ("State Justice Center"), raised no objection to the subpoenas.  Instead, they engaged in constructive discussions with defendants about narrowing the subpoenas to the essential documents they were able to produce, and were prepared to produce their records on time—or indeed early—until the Court quashed the subpoenas.

July 13, 2018  
Page 3

WilmerHale

Documents related to that investigation and litigation are necessarily relevant to (and admissible regarding) Ms. Teams's potential bias in connection with her dishonest answers. Such bias would have provided a valid basis to challenge Ms. Teams for cause.

The subpoenas to Ms. Teams and her counsel track a similar subpoena issued in *United States v. Daugerdas*, 867 F. Supp. 2d 445 (2012), a copy of which (along with the rider) is attached as Exhibit A. The subpoena likewise included requests for "all documents" pertaining to the juror's service, as well as "all documents" relating to the issues that had arisen with respect to that juror, mainly her interactions with the government and mental health concerns. *See* Exhibit A. The *Daugerdas* subpoena even went so far as to request traffic tickets and incident reports, as well as the juror's telephone and text records. *See id*. The subpoena here is more narrowly tailored to identify relevant and admissible evidence pertaining to the issues at the hearing: Ms. Teams's jury service, the civil litigation against her, and the State Justice Center's investigation. For example, transcripts from hearings in the civil suit are relevant to show Ms. Teams's understanding of the lawsuit against her and to demonstrate that she intentionally did not disclose it.

Moreover, the subpoenas to Ms. Teams's employer and the State Justice Center are limited—they include one and three requests, respectively—and seek relevant documents that may not be in Ms. Teams's possession. Investigative reports and interview memoranda maintained by the State Justice Center, for example, are relevant because they demonstrate Ms. Teams's knowledge of the investigation and are probative of her potential bias as a result of it. Similarly, any disciplinary action taken against Ms. Teams in connection with the State Justice Center's investigation is relevant to her understanding of that investigation. Such records would be admissible during the hearing under the business-records exception to the hearsay rule (Fed. R. Evid. 803(6)). *See Nachamie*, 91 F. Supp. 2d at 564 ("Because the documents primarily seek business records, they are at this early stage likely to be admissible. . . .").

For the foregoing reasons, defendants' subpoenas satisfy the requirements of Rule 17, and they should not be quashed.

Finally, pursuant to the Court's instructions, defendants have attached as Exhibit B to this letter a proposed list of questions for the hearing. However, defendants object to the Court's plan to pose all questions itself, rather than allowing defendants (and the government if it wishes) to do so. In other hearings relating to issues of juror dishonesty, counsel have been permitted to question the juror. *See, e.g.*, 2/15/2012 Tr., *United States v. Daugerdas*, 09-cr-581 (WHP); Decision and Order, *United States v. Nix*, 12-cr-6181 (EAW) (W.D.N.Y. Aug. 24, 2017), Doc. No. 382 at 10 ("Only the Court asked questions on the first day of the hearing, but counsel were permitted to ask questions during the second day of the hearing"). The same approach—which obviously includes the Court overseeing any questioning by counsel—is warranted here. In addition, defendants request that they be permitted to submit follow-up questions to the Court at the hearing before Ms. Teams is dismissed.

July 13, 2018  
Page 4

WILMERHALE

We remain available to answer any questions the Court may have.

Respectfully submitted,

/s/ Howard M. Shapiro

Howard M. Shapiro

cc:  Counsel of Record (by CM/ECF)